**Best scanned image available.**

_____ FILED  __ ____ ENTERED
_____ LODGED __ ____ RECEIVED

NOV 19 2004   DJ

AT SEATTLE
CLERK U.S. DISTRICT COURT
BY WESTERN DISTRICT OF WASHINGTON
DEPUTY

UNITED   STATES   DISTRICT   COURT

WESTERN  DISTRICT  OF  WASHINGTON

TYLER MILLS,

    Plaintiff,

vs.

RON SIMS, AMY CALDERWOOD, MATTHEW CONQUERGOOD, KENNETH RAY, LARRY MAYES, ROSEMARIE GRZETIC, CRAIG NELSON, JOHN DOE A, BOB DENEUI, TERRA MCGLENN, C. BOONE, JOHN DOE B, DOUG HJELLEN, BARBARA CABUCO, JOHN, D. OGLE, F. LEE, JOHN DOE C, ELIZABETH WATKINS, JEAN HOLCOMB, BARBARA MASSEY, GORDON KARLSSON, J. MCKEON, BRUCE REEDER, T. CLARK, JOHN DOE D, JOHN DOE E, D. LATHROP, G. MCGLOUGHLIN, R. HOLLOMAN, D. NGUYEN, D. BLISS, JOHN DOE F, MR. KIRK, ALONZO PLOUGH, GREGORY KIPP, BETTE PINE, NIKKI BEHNER, SANDY PAXSON, BARBARA HANSON, DAVID KERSEY,

COMPLAINT

**CV4 2342 L**

Case No. _____

JURY TRIAL DEMANDED

04-CV-02342-CMP

PAUL GULICK, RICHARD ATER, JOAN WU, and BARBARA KRZYZEK, sued in their individual and official capacities

Defendants.

## Preliminary Statement

This is a civil rights action filed by Tyler Mills, a pre-trial detainee, for damages and injunctive relief under 42 U.S.C. §§ 1983, 1985, 1986, and 12101, et seq., alleging violations of the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, and violations of Article I, §§ 3, 4, 5, 12, 14, and 22 of the Constitution of the State of Washington. The plaintiff also alleges the torts of assault and battery, negligence, false imprisonment, medical negligence, medical malpractice, and intentional and negligent infliction of mental and emotional distress.

## Jurisdiction

1. The court has jurisdiction over the plaintiffs' claims of Violation of federal constitutional rights under 42 U.S.C. §§ 1331 and 1343.

2. The court has supplemental jurisdiction over the plaintiffs' state law claims under 42 U.S.C. § 1367.

## Parties

3. The plaintiff, Tyler Mills, is and was incarcerated at King

2

County Correctional Facility ("KCCF"), 500 Fifth Avenue, Seattle, WA 98104, during the events described in this complaint.

4. Defendant Ron Sims is the King County Executive, King County Courthouse, 516 3rd Avenue, Room 400, Seattle, WA 98104. He is sued in his individual and official capacities.

5. Defendants Amy Calderwood and Matthew Conquergood are employees of the King County Office of Citizen Complaints - Ombudsman, Yesler Building, 400 Yesler Way, Room 240, Seattle, WA 98104. They are sued in their individual and official capacities.

6. Defendant Kenneth Ray is the Director of KCCF. He is sued in his individual and official capacities.

7. Defendant Larry Mayes is the former Interim Director of KCCF. He is sued in his individual and official capacities.

8. Defendant Rosemarie Grzetic is the Administrator III of KCCF. She is sued in her individual and official capacities.

9. Defendant Craig Nelson is the Acting Facility Commander of KCCF. He is sued in his individual and official capacities.

10. Defendant John Doe A is Defendant Nelson's Supervisor at KCCF whose name is presently unknown to plaintiff. He is sued in his individual and official capacities.

11. Defendant Bob DeNlevi is the Corrections Program Administrator at KCCF. He is sued in his individual and official capacities.

12. Defendant Tarra McGlenn is an Administrative Assistant to Defendant DeNevi at KCCF. She is sued in her individual and official capacities.

13. Defendant C. Boone is a Captain at KCCF. He is sued in his

3

individual and official capacities.

14. Defendant John Doe B is Defendant Boone's Supervisor at KCCF whose name is presently unknown to plaintiff. He is sued in his individual and official capacities.

15. Defendants Doug Hjellen, T. Clark, and D. Bliss are sergeants at KCCF. They are sued in their individual and official capacities.

16. Defendant Barbara Cabuco is the Commissary Supervisor at KCCF. She is sued in her individual and official capacities.

17. Defendant John is an assistant to Defendant Cabuco whose full name is presently unknown to plaintiff. He is sued in his individual and official capacities.

18. Defendants D. Ogle, F. Lee, John Doe D, and John Doe E are employees of KCCF whose positions are presently unknown to plaintiff. They are sued in their individual and official capacities.

19. Defendant John Doe C is Defendant Lee's Supervisor at KCCF whose name is presently unknown to plaintiff. He is sued in his individual and official capacities.

20. Defendant Elizabeth Watkins is a Confidential Secretary to Defendant Ray. She is sued in her individual and official capacities.

21. Defendant Jean Holcomb is the Director of the King County Law Library, Room 807, Administration Building, Seattle, WA 98104. She is sued in her individual and official capacities.

22. Defendant Barbara Massey is the Librarian at KCCF. She is sued in her individual and official capacity.

23. Defendant Gordon Karlsson is the Acting Major of KCCF. He is sued in his individual and official capacity.

4

24. Defendants J. McKeon and Bruce Reeder are Classification Supervisors at KCCF. They are sued in their individual and official capacities.

25. Defendant's D. Lathrop, G. McGloughlin, A. Holloman, D. Nguyen, and Mr. Kirk are Correctional Officers at KCCF. They are sued in their individual and official capacities.

26. Defendant John Doe F is Defendant Bliss's Supervisor at KCCF whose name is presently unknown to plaintiff. He is sued in his individual and official capacities.

27. Defendant Alonzo Plough is the Director and Health Officer of King County Department of Public Health ("DPH"), 999 Third Avenue, Suite 1200, Seattle, WA 98104. He is sued in his individual and official capacities.

28. Defendant Gregory Kipp is the Chief Administrative Officer of DPH. He is sued in his individual and official capacities.

29. Defendants Bette Pine, Nikki Behner, Sandy Paxson, and Barbara Hanson are Supervisors employed by DPH at KCCF. They are sued in their individual and official capacities.

30. Defendant David Kerrey is a Medical Doctor employed by DPH at KCCF. He is sued in his individual and official capacities.

31. Defendants Paul Gulick, Richard Ater, Joan Wu, and Barbara Krzyzek are medical staff employed by DPH at KCCF. They are sued in their individual and official capacities.

32. All the defendants have acted, and continue to act, under color of state law at all times relevant to this complaint.

Facts

33. Plaintiff has been incarcerated numerous times over the

5

past couple of years, both as a pre-trial detainee and as a convicted felon, at KCCF. Most of this time has been spent in the psychiatric housing areas of KCCF; for plaintiff, that being the housing areas designated as S7LD and N7. S7LD is psychiatric group housing and N7 is psychiatric isolation.

34. Plaintiff has been incarcerated at KCCF from 11/12/02 to 11/13/02, 12/11/02 to 3/31/02, 10/31/03 to 1/7/04, 4/21/04 to 6/3/04, and 7/4/04 to current.

35. Plaintiff was housed most of the time from 11/12/02 to 11/13/02, and 12/11/02 to 3/31/02 in either S7LD or N7.

36. Plaintiff was housed in S7LD from 11/9/03 to 11/17/03, 11/20/03 to 12/16/03, 4/30/04 to 5/16/04, 5/24/04 to 6/3/04, and 7/8/04 to 7/12/04.

37. Plaintiff was housed in N7 from 12/16/03 to 1/9/04, 5/16/04 to 5/24/04, and 7/12/04 to current.

I. Hygiene Materials

38. In mid-2003 KCCF and DPH employees stopped allowing inmates in S7LD access to any commissary. In December, 2003, KCCF and DPH employees stopped allowing inmates in N7 commissary.

39. Prior to this, inmates in S7LD and N7 were allowed to purchase the following hygiene materials from the commissary: various types of shampoo and conditioner, various types of deodorant and antiperspirant, various types of soap, various types of lotions, creams, and powders; various types of toothpaste, etc.

40. Up until about mid-October, 2004, inmates in S7LD and N7 were not allowed to purchase any hygiene materials from the commissary.

41. Currently, inmates are only allowed to purchase 1 tiny bar

6

of soap, 1 comb, 1 toothbrush, and 1 tiny bottle of non-cavity fighting toothpaste a week. No other hygiene materials are allowed.

42. Plaintiff has submitted letters, complaints, and administrative grievances, to defendants Sims, Calderwood, Conquergood, Ray, Mayes, Grzetic, Nelson, John Doe A, DeNevi, McGlenn, Boone, John Doe B, Hjellen, Cabuco, John, Karlsson, McKeon, Reader, Plough, Kipp, Pine, Behner, Paxson, Hanson, Kersey, and Ater, complaining about this, to no avail.

43. Inmates in punitive confinement at KCCF are allowed to purchase the hygiene materials listed in paragraph 39 above; to not allow inmates in 57LD and N7 the same is simply wrong.

44. Inmates in 57LD and N7 are treated worse than inmates in punitive confinement.

II. Writing Materials

45. In mid-2003 KCCF and DPH employees stopped allowing inmates in 57LD access to any commissary. In December, 2003, KCCF and DPH employees stopped allowing inmates in N7 commissary.

46. Prior to this, inmates in 57LD and N7 were allowed to purchase the following writing materials from the commissary: stamped envelopes, manila envelopes, pads of paper, tiny pencils, erasors, etc.

47. Up until about mid-October, 2004, inmates in 57LD and N7 were not allowed to purchase any writing materials from the commissary.

48. Currently, inmates in 57LD and N7 are only allowed to purchase 3 sheets of paper and 3 envelopes a week. No other writing materials are allowed to be purchased.

49. Plaintiff has submitted letters, complaints, and administrative

7

grievances, to defendants Sims, Calderwood, Conquergood, Ray, Mayes, Grzetic, Nelson, John Doe A, DeNevi, McGlenn, Boone, John Doe B, Hjellen, Cabuco, John, Ogle, Lee, John Doe C, Karlsson, McKeon, Reeder, Plough, Kipp, Pine, Behner, Paxson, Hanson, Kersey, and Ater, complaining about this, to no avail.

50. Inmates in punitive confinement at KCCF are allowed to purchase the writing materials listed in paragraph 46 above; to not allow inmates in S7LD and N7 the same is simply wrong.

51. Inmates in S7LD and N7 are treated worse than inmates in punitive confinement.

52. Plaintiff recieved absolutely no writing paper or envelopes from 11/9/03 to 12/6/03, 4/21/04 to 6/3/04, and 7/4/04 to 9/1/04, despite dozens and dozens of letters (on forms provided by KCCF), complaints and administrative grievances (on forms provided by KCCF), to defendants Nelson, John Doe A, DeNevi, McGlenn, Boone, John Doe B, Hjellen, Cabuco, John, Lee, John Doe C, Karlsson, McKeon, Reeder, Behner, Hanson, Kersey, and Ater, during said time periods.

53. On 9/1/04, 9/18/04, and 9/15/04 I was allowed 3 sheets of paper and 3 business envelopes.

54. On or about 9/1/04 plaintiff sent a letter to his pastor, asking his pastor to send him a few business envelopes, a few manila envelopes, and a few pads of paper.

55. On 9/20/04 defendant Ogle rejected the items sent to plaintiff by his pastor (4 Legal Envelopes, 4 Manila Envelopes, and a Tablet of Paper). These items were returned to plaintiff's pastor. Plaintiff complained about this to defendants DeNevi and Nelson,

8

however no action was taken.

56. In mid-August, 2004, plaintiff was able to obtain an envelope and a sheet of paper from another inmate. Plaintiff used this to write a letter to his adoptive mother. On 8/25/04 plaintiff recieved a response from his adoptive mother stating "I was glad to hear finally from you, I must admit I was a little worried...".

57. Plaintiff has missed court deadlines, etc., due to not being allowed adequate access to writing materials. Plaintiff has been unable to draft any new papers for the courts due to inadequate access to writing materials.

58. The pencils that KCCF employees allow inmates to write with are so short that they cause pain in the fingers and hands. Plaintiff complained about this to defendants Hjellen and Boone, to no avail.

## III. Legal Materials / Jail Policies

59. Plaintiff is only allowed 5 books a week from the law library. This has only happened recently; prior to that, plaintiff was only allowed 3 books a week from the law library.

60. Plaintiff is not allowed physical access to the law library.

61. Plaintiff does not know what the law library has available, thus plaintiff is unable to make intelligent requests for legal materials without knowing what is available.

62. Plaintiff is only allowed 8 cases or 8 law reviews a week from the law library. This has only happened recently; prior to that,

9

plaintiff was only allowed 4 cases and no law reviews a week from the law library.

63. On 10/11/04 plaintiff sent a letter to defendant Holcomb requesting that she send plaintiff a complete list of all materials that she has available, and then asking for specific areas of the law, i.e., civil rights, mental health, constitutional law, civil litigation etc. Defendant Holcomb has not responded to said letter.

64. Plaintiff has submitted letters, complaints, and administrative grievances, to defendants Sims, Calderwood, Conquergood, Ray, Mayes, Grzetic, Nelson, John Doe A, DeNevi, McGlenn, Boone, John Doe B, Hjellen, and Massey, complaining about this, to no avail.

65. Plaintiff has been denied access to all policies of KCCF. Plaintiff has submitted letters, complaints, and administrative grievances to defendants Nelson, John Doe A, DeNevi, McGlenn, Boone, John Doe B, Watkins, and Karlsson, complaining about this, to no avail.

66. On 11/10/04 defendant Massey advised plaintiff that he was misusing his privileges to access to legal materials by requesting materials directly related to this complaint and a couple of post-conviction matters.

67. Defendant Massey consistently delivers materials to plaintiff that he does not request, counting them against his 5-a-week limit.

68. Defendant Massey consistently delivers materials to plaintiff not in the order plaintiff requested them.

69. Defendant Massey consistently send up partial-responses to plaintiff's requests. For instance, when plaintiff requests that a case be shepardized, he gets a response that doesn't include the cites to

10

the research references, law reviews, american law reports, etc. (This is just an example, there are many other partial-responses, and in some cases, no responses at all).

70. Plaintiff has suffered subsantial prejudice as a result of the actions, or in-action, of the defendants. Plaintiff has missed deadlines, and is unable to properly investigate any new claims.

71. Plaintiff has an upcoming post-conviction deadline that he is at risk of missing due to the defendants actions, or in-action.

IV. Psychiatric Housing and Care

72. On 7/8/04 defendants Clark and Gulick conspired with each other to transfer plaintiff from general population to psychiatric housing,

72a. without plaintiffs' consent;

72b. without due process; and

72c. without justification.

73. Plaintiff was transferred from general popviation to psychiatric housing that same day.

74. On 7/9/04 defendants McKeen, Reeder, kersey, Gulick, John Doe D, and John Doe E, conspired with each other to keep plaintiff housed in psychiatric housing permanently;

74a. without plaintiffs' consent;

74b. without due process; and

74c. without justification.

75. On 7/9/04 defendant Gulick made it very clear to plaintiff that plaintiff "will never be moved out of psychiatric housing while in king

11

County custody this time, or anytime in the future."

76. One of the nursing staff advised plaintiff that defendant Karlsson ordered medical staff never to move plaintiff from psychiatric housing.

77. Either defendants Ater, Wu, or Krzyzek (and others whose names are unknown to plaintiff) see plaintiff once a week, but when plaintiff asks to be moved from psychiatric housing, it is a farce. These weekly visits amount only to harassment.

78. Medical and KCCF staff, by keeping plaintiff housed in psychiatric housing, are in violation of Revised Code of Washington ("RCW") 71.05.

79. Plaintiff is developmentally disabled, with the diagnoses of Fetal Alcohol Spectrum Disorder, Fetal Alcohol Effects, and Static Encephalopathy. Plaintiff has had these disabilities all his life.

80. Rather than treat plaintiffs developmental disabilities, defendants Ray, Mayes, Nelson, Karlsson, McKeon, Reeder, Clark, John Doe D, John Doe E, Plough, Kipp, Pine, Paxson, Hanson, Kersey, Gulick, Ater, Wu, and Krzyzek, punish plaintiff for something plaintiff has no control over. If defendants want to punish somebody, they should punish plaintiffs biological mother; she created this mess.

81. The only treatment that defendants offer is medications.

82. The defendants don't provide to plaintiff the medications that he needs.

83. Plaintiff needs Klonopin 1mg X 2 daily and BuSpar 15mg X 2 daily.

84. The defendants have only allowed plaintiff Tegretol and BuSpar.

85. Plaintiff had an alergic reaction to these medications. They were then discontinued at plaintiffs request.

86. Prior to taking these medications, plaintiff requested many times what the possible side-effects were to these medications.

87. The defendants failed to provide this information and plaintiff then suffered the allergic reaction.

88. Another medication that has been recommended to plaintiff that might be helpful to plaintiff is Strattera.

89. Plaintiff asked defendant Ater about Strattera and he agreed that Strattera would be helpful to plaintiff (defendant Ater advised plaintiff that he takes Strattera himself) however he said that he would not allow me this much-needed medication.

90. The defendants provide no therapy of any kind to plaintiff.

91. The defendants provide no diagnostic services to plaintiff.

92. The defendants provide no group therapies to plaintiff.

93. The defendants provide no music therapies to plaintiff.

94. The defendants provide no art therapies to plaintiff.

95. The defendants offer no services to plaintiff that would be offered to plaintiff in a conventional psychiatric hospital.

96. When plaintiff was in psychiatric housing in the Federal Bureau of Prisons ("BOP") at Federal Medical Center ("FMC") – Rochester (MN) and FMC-Butner (NC) he was provided with a vast number of psychiatric services. These services included, but are not limited to, the services listed above that the defendants do not provide to plaintiff.

97. When plaintiff is at either FMC-Rochester or FMC-Butner

13

his mental health stabilizes.

98. When plaintiff is at KCCF, his mental health rapidly deteriates.

99. Plaintiff is currently stable enough to draft this complaint. Usually, without adequate care, plaintiff cannot concentrate, or forgets (memory-deficits), long enough to do this. The defendants provide no treatment.

100. Plaintiff is disturbed at all times of day and night by other inmates screaming that the CIA is out to get them, or screaming that they just killed a hundred people, etc., etc. Plaintiff does not want to be around these individuals.

101. Plaintiffs developmental disabilities cannot adequately be treated at KCCF.

102. The defendants provide incompetent and inadequate care.

103. In fact, the defendants provide no treatment at all. They only punish inmates for their developmental disabilities or mental illnesses.

104. The defendants should have to transfer plaintiff to a facility that can adequately treat his disabilities.

105. Plaintiffs mental health continues to deteriate and his continued confinement within the hands of the defendants will do nothing to help plaintiff.

106. The medical staff at KCCF are not adequately trained.

107. The KCCF staff are not adequately trained.

108. The medical staff at KCCF lack medical qualifications.

109. The defendants fail to provide facilities and procedures that allow for proper diagnosis and treatment.

110. The medical staffing is inadequate.

14

111. Plaintiff has requested many times to have his teeth examined and cleaned.

112. The defendants have refused plaintiffs requests.

113. The defendants either need to provide adequate dental services or they need to provide adequate cavity-fighting toothparte to prevent dental problems.

114. Plaintiff has submitted letters, complaints, and administrative grievances, to defendants Sims, Calderwood, Conquergood, Ray, Mayes, Grzetic, Boone, John Doe 6, Hjellen, Karlsson, Plough, Kipp, Pine, Behner, Paxson, Hanson, Kersey, Gulick, Ater, Wu, and Krzyzek, complaining about these issues, to no avail.


## V. Psychiatric Isolation

115. Plaintiff has now been housed continuously for more than four months now in psychiatric isolation.

116. Plaintiff is confined to his cell 23 hours a day.

117. Plaintiff is housed in psychiatric isolation only because of a phone restriction.

118. Plaintiff is being punished because of a court-ordered phone restriction.

119. Plaintiff does not believe that the phone restriction was supposed to be punitive.

120. The BOP has a phone system (ITS-2) that requires the use of pin numbers to access.

121. KCCF should have a similar phone system, so that they don't punish inmates, like plaintiff, who should not be punished.

15

122. Plaintiff has submitted letters, complaints, and administrative grievances, to defendants Nelson, DeNevi, McGlenn, Boone, Hjellen, Paxson, Hanson, and Kersey, complaining about this issue, to no avail.

VI. Conditions of Psychiatric Housing - Sanitation

123. When plaintiff was placed in his former cell, N7LC07, the conditions of that cell were unsanitary. There was food smeared on the walls, paint peeling off the walls, it stank in there, and there were bugs flying and crawling around. Those conditions were outright horrible.

124. While in that cell (N74C07) plaintiff was required to sleep on a mattress on the floor.

125. Plaintiff was housed in that cell (N7LC07), in those conditions, for more than 35 days.

126. Plaintiff submitted administrative grievances to defendants Hjellen, Boone, John Doe B, Hanson, and Paxson, complaining about this issue, to no avail.

127. When plaintiff was placed in his current cell (N7UC10) on 8/22/04, the conditions of this cell were worse than the cell plaintiff was in to begin with (N74C07).

128. Plaintiff was required to clean up other inmates feces, etc., off the floor and walls when he got moved to his current cell (N7UC10).

129. Defendant Nguyen claimed, in response to one of plaintiffs administrative grievances, that "I, officer D. Nguyen inspected 7NUC10 on Saturday August 22, 2004, and the room was clean before I/M Mills got transferring into 7NUC10 ...."

130. Defendant Nguyen's statement is simply untrue. He did not, nor

16

did anyone else, inspect this cell prior to plaintiff being moved to it.

131. When plaintiff confronted Defendant Nguyen about this, he became hostile with plaintiff. Plaintiff hopes that this lawsuit does not revive said hostilities.

132. Plaintiff submitted administrative grievances to defendants Nguyen, Hjellen, Boone, Hanson, and Paxson, complaining about this issue, to no avail.

133. The mattresses that the defendants allow inmates are unsanitary.

134. Only recently have the defendants allowed plaintiff disinfectant to clean with. Prior to that plaintiff was only allowed a spray-cleaner that was not a disinfectant.

135. Plaintiff submitted administrative grievances to defendants Holloman, Hjellen, Boone, Hanson, and Paxson, complaining about these issues, to no avail.

136. The showers that plaintiff is required to shower in are almost never cleaned. They are unsanitary.

137. From 10/31/04 to 12/6/04, 4/30/04 to 5/10/04, 5/24/04 to 6/3/04, and again from 7/8/04 to 7/12/04, plaintiff was forced to sleep on the floor on mattresses that were unsanitary, damaged, and were never cleaned.

138. Plaintiff has submitted letters, complaints, and administrative grievances, to defendants Nelson, Behner, Lathrop, Hjellen, and Boone, complaining about these issues, to no avail.

139. During all times that plaintiff was housed in STLD the conditions were extremely unsanitary.

140. The spray bottles that plaintiff is allowed to use for cleaning

17

do not have labels on them. This is an OSHA violation.

141. Plaintiff is never offered cleaning supplies, he is required to beg for them.

142. Plaintiff submitted administrative grievances to defendants Hjellen, Boone, John Doe B, and McGloughlin, complaining about these issues, to no avail.

## VII. Conditions of Psychiatric Housing - Recreation

143. Plaintiff has not been allowed any recreation the entire time he has been in 57LD and N7.

144. Plaintiff has also been denied outside recreation. The rest of the inmates in KCCF are allowed outdoor recreation.

145. Plaintiff has submitted administrative grievances to defendants DeNevi, Nelson, John Doe A, Hjellen, Boone, John Doe B, Hanson, and Behner, complaining about these issues, to no avail.

## VIII. Conditions of Psychiatric Housing - Reading Materials

146. Plaintiff is allowed access to reading materials in N7, however plaintiff, when he was in 57LD (and everyone else in 57LD), was not allowed reading materials. To the best of plaintiff's knowledge, this continues to be a problem in 57LD.

147. Plaintiff has submitted administrative grievances to defendants Massey, DeNevi, Nelson, Hjellen, Boone, John Doe B, Hanson, and Behner, complaining about this issue, to no avail.

## IX. Conditions of Psychiatric Housing - Clothing and Bedding

148. Plaintiff is not allowed to have pillows, pillowcases, socks,

18

Underwear, sheets, blankets, towels, or washcolother in his cell.

149. Thus it becomes very cold and

149a. Unsanitary.

150. The clothing that plaintiff is allowed to wear is only cleaned once a week.

151. This becomes unsanitary.

152. The piece of canvas that I am allowed to cover up with to sleep is never cleaned. It has only been exchanged for a new one once in the past four months.

153. This becomes extremely unsanitary.

154. Our clothing should be cleaned at least 2 or 3 times a week and our piece of canvas at least once a week.

155. The mattresses are ripped, torn, or otherwise damaged, and need to be replaced.

156. KCCF is always running out of pieces of canvas so that inmates have to freeze. They need to purchase more.

157. Plaintiff has submitted administrative grievances to defendants Hjellen, Boone, John Doe B, Bliss, John Doe F, Hanson, Paxson, and Behner, complaining about these issues, to no avail.

X. Conditions of Psychiatric Housing — Overcrowding

158. At most times that plaintiff was housed in 5760 it was extremely overcrowded. Plaintiff almost had to step over other people to use the bathroom. The conditions are almost as bad as the Miami – Dade County Jail (Fl), which plaintiff unfortunately had to experience.

19

159. Plaintiff has submitted administrative grievances to defendants Hjellen, Boone, John Doe B, Lathrop, DeNevi, Nelson, and Behner, complaining about this issue, to no avail.

XI. Conditions of Psychiatric Housing - Running Water

160. Numerous times during plaintiffs stays in NT, KCCF staff have shut of plaintiffs water due to the inmates in adjoining cells misusing it.

161. Plaintiff was being punished for someone elses misbehavior.

162. Plaintiff was, at times, confined to his cell for days, even weeks, without running water. He had to beg staff in order to be allowed to flush his toilet, get a drink of water, etc., which they rarely allowed to plaintiff; all due to another inmates misbehavior.

163. Plaintiff has submitted administrative grievances to defendants Hjellen, Boone, John Doe B, and Kirk, complaining about this issue, to no avail.

XII. Conditions of Psychiatric Housing - Cell Lighting

164. The lights in plaintiffs cell are kept on 24 hours a day.

165. This disturbs plaintiffs sleep and causes eyestrain.

166. Plaintiff has submitted administrative grievances to defendants Hjellen, Boone, and John Doe B, complaining about this issue, to no avail.

XIII. Conditions of Psychiatric Housing - Conditions as a Whole

167. The conditions of psychiatric housing, as explained throughout this complaint, are so horrible that they do nothing but exacerbate any mental health conditions that plaintiff, or anybody else housed in psychiatric housing, might be suffering from.

20

168. These conditions amount to nothing short of psychological torture.

169. These conditions are clearly in violation of RCW 71.05.

170. Plaintiff has submitted administrative grievances to Hjellen, Boone, John Doe B, Hanson, and Paxson, stating exactly the same as above, to no avail.

XIV. Statement on Exaustion of Administrative Remedies

171. Plaintiff has exausted his administrative remedies.

172. Plaintiff reserves the right to amend this complaint to add additional claims once his administrative remedies are exausted on those additional claims.

173. Any argument by the defendants of non-exaustion would be frivolous and without arguable merit.

174. Plaintiff has submitted literally several hundreds of letters, complaints, and administrative grievances to the defendants regarding the issues raised in this complaint, all to no avail.

XV. Conclusionary Statement

175. If this complaint is inadequate or deficient in any way, or if plaintiff has missed any court rules, etc., it is of no fault of the plaintiff.

176. The defendants have consistently refused to provide plaintiff with adequate access to KCCF and DPH policies and procedures.

177. The defendants have consistently refused to provide plaintiff with adequate access to legal materials in order to properly investigate and present this matter.

21

XVI. Relief Requested

WHEREFORE, plaintiff requests that the court grant the following relief:

A. Issue declaratory relief as determined appropriate by the trier of fact.

B. Issue injunctive relief as determined appropriate by the trier of fact.

C. Award compensatory damages jointly and severally against the defendants as determined appropriate by the trier of fact.

D. Award punitive damages jointly and severally against the defendants as determined appropriate by the trier of fact.

E. Award all costs, and attorney fees (if any).

F. Grant such other relief as it may appear that plaintiff is entitled.

Plaintiff declares under penalty of perjury that the foregoing is true and correct.

Dated at Seattle, Washington, this 15th day of November, 2004.

Tyler Mills

Tyler Mills, Plaintiff pro se

King County Correctional Facility

500 Fifth Avenue

Seattle, WA 98104