01

02

03

04                          UNITED STATES DISTRICT COURT
                           WESTERN DISTRICT OF WASHINGTON
05                                    AT SEATTLE

06   TYLER MILLS,                         )    CASE NO. C04-2342-RSL
                                          )
07            Plaintiff,                   )
                                          )
08       v.                               )    REPORT AND RECOMMENDATION
                                          )
09   RON SIMS, et al.,                     )
                                          )
10            Defendants.                  )
     _____ )
11

12                   INTRODUCTION AND SUMMARY CONCLUSION

13            This is a *pro se* civil rights action under 42 U.S.C. § 1983.  Plaintiff filed this action in

14   November 2004 while he was incarcerated at the King County Correctional Facility ("KCCF").

15   Plaintiff alleges in his supplemental and amended complaint, filed on January 14, 2005, that his

16   confinement in the acute psychiatric housing unit at KCCF violated his federal and state

17   constitutional rights, various federal statutes, and common law.  Plaintiff also alleges in his

18   complaint that he was subjected to unconstitutional conditions of confinement during his

19   incarceration in the psychiatric housing unit.  Specifically, plaintiff contends that he had limited

20   access to the commissary, he was denied adequate access to legal materials, he received

21   inadequate treatment and care for his mental health issues, and he was subjected to unsanitary,

22   unsafe, and uncomfortable living conditions.

ORDER DIRECTING SERVICE BY
FIRST-CLASS MAIL AND PROCEDURES
PAGE -1

01        Plaintiff identified 60 defendants in his amended complaint.  Twelve of those defendants

02   were identified only as "John Doe" defendants and therefore have not been served.  The remaining

03   48 defendants now move for summary judgment. [1]  Plaintiff, despite having advised on at least

04   three occasions of the summary judgment requirements pursuant to *Rand v. Rowland*, 154 F.3d

05   952 (9th Cir. 1998), has filed no response to defendant's motion.  Defendant's motion for

06   summary judgment is now ripe for review.  This Court, having reviewed defendants' motion, and

07   the balance of the record, concludes that defendants' motion for summary judgment should be

08   granted.

09                                FACTUAL BACKGROUND

10        Plaintiff's claims all arise out of his placement and retention in the psychiatric housing unit

11   at KCCF.  The record reflects that plaintiff was incarcerated at KCCF numerous times between

12   November 2002 and May 2005. ( *See* Dkt. No. 12 at 6.)  Plaintiff's most recent period of

13   incarceration began on July 4, 2004, when he was booked into the jail on a charge of

14   communicating with a minor for immoral purposes.  (Dkt. No. 28 at 1.)  Plaintiff was released on

15   May 2, 2005, and apparently has not returned to KCCF since that time.[2]  (*See* Dkt. No. 61 at 1.)

16   After plaintiff was booked into the jail on July 4, 2004, he was initially sent to the Regional Justice

17   Center ("RJC") in Kent where he was classified as medium security.  (Dkt. No. 28 at 1-2.)

18   However, once at the RJC, plaintiff began making statements indicating that he intended to harm

19   himself.  (*Id.* at 2.)  As a result of these statements, jail health providers were asked to assess

20   _____

21        [1] Defendants, in support of their summary judgment motion, rely on the declarations of Jim
     McKeon and Dr. David Kersey which were previously submitted in support of defendants'
22   response to plaintiff's motion for preliminary injunctive relief.  (*See* Dkt. Nos. 28 and 29.)

        [2] Plaintiff currently resides in Elk Mound, Wisconsin.

ORDER DIRECTING SERVICE BY
FIRST-CLASS MAIL AND PROCEDURES
PAGE -2

01    plaintiff.  (*Id.*)

02         After reviewing plaintiff's history, which included past suicide attempts in jail[3], jail health

03    providers directed that plaintiff be transferred to the acute psychiatric unit at KCCF where suicide

04    observation could be maintained.  (Dkt. No. 29 at 2.)  Plaintiff was first assigned to group suicide

05    observation housing, but was subsequently transferred to single cell suicide observation housing,

06    apparently as a result of an order entered by the King County Superior Court restricting plaintiff's

07    phone access to permit him access only to his attorney.  (Dkt. No. 28 at 2.)

08         Documents submitted by defendants indicate that, in addition to his history of suicide

09    attempts, plaintiff has a history or ingesting, or threatening to ingest, various objects including

10    razor blades and sharpened toothbrushes.  (Dkt. No. 29, Ex. B.)  Dr. Kersey states in his

11    declaration that plaintiff has been sent to the hospital several times for treatment related to his

12    claims of self-harm.  (Dkt. No. 29 at 2-3.)  Dr. Kersey further states that plaintiff was continued

13    on 15 minute observation checks because of his behavior, and that his staff visited plaintiff on a

14    weekly basis for psychiatric evaluation follow-up.  (*Id.* at 3.)  The reports from the weekly visits

15    indicate that plaintiff  consistently refused to respond to staff or denied needing any assistance

16    from staff.  (*Id.*, Ex. E.)

17         Defendant McKeon states in his declaration that inmates who are placed in the psychiatric

18    housing unit have limited access to goods that might be used to harm themselves, and thus have

19    restricted access to commissary and legal materials.  (Dkt. No. 28 at 3.)  Defendant McKeon

20    _____

21        [3] The record indicates that plaintiff overdosed on Tylenol on at least seven occasions
       during prior periods of incarceration.  (Dkt. No. 29, Ex. A.)  A note on one of the documents

22    produced by defendants indicates that plaintiff has a history of convincing staff to reclassify him
       to the general population by reporting that he is not suicidal, and then overdosing on dangerous
       amounts of Tylenol.  (*Id.*, Ex. A at 1.)

01  explains that restricted commissary means that inmates receive only basic hygiene items such as

02  soap, toothpaste, and toothbrushes.  (*Id.*)  Defendant McKeon notes, however, that inmates who

03  attempt to use these basic hygiene items to harm themselves might have their access to these items

04  restricted as well. ( *Id.*)  Defendant McKeon acknowledges that plaintiff was on restricted

05  commissary, but states that plaintiff was provided limited access to legal and research materials,

06  and was allowed to have a pencil and paper.  (*Id.*)

DISCUSSION

Summary Judgment Standard

09      Summary judgment is appropriate when, viewing the evidence in the light most favorable

10  to the nonmoving party, there exists "no genuine issue as to any material fact" such that "the

11  moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A material fact

12  is a fact relevant to the outcome of the pending action.  *See Anderson v. Liberty Lobby, Inc.*, 477

13  U.S. 242, 248 (1986).  Genuine issues of material fact are those for which the evidence is such that

14  "a reasonable jury could return a verdict for the nonmoving party."  *Id.*

15      In response to a properly supported summary judgment motion, the nonmoving party may

16  not rest upon mere allegations or denials in the pleadings, but must set forth specific facts

17  demonstrating a genuine issue of fact for trial and produce evidence sufficient to establish the

18  existence of the elements essential to his case.  *See* Fed. R. Civ. P. 56(e).  A mere scintilla of

19  evidence is insufficient to create a factual dispute.  *See Anderson*, 477 U.S. at 252.  In ruling on

20  summary judgment, the court does not weigh evidence to determine the truth of the matter, but

21  "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547,

22  549 (9th Cir. 1994).

01          Defendants argue in their summary judgment motion that plaintiff fails to adequately allege

02    personal participation on the part of each of the named defendants.  Defendants further argue that,

03    to the extent plaintiff may have adequately alleged personal participation, he nonetheless fails to

04    allege sufficient facts to establish any violation of federal or state law.

05                                        Personal Participation

06          In order to sustain a civil rights action, a plaintiff must show (1) that he suffered a violation

07    of rights protected by the Constitution or created by federal statute, and (2) that the violation was

08    proximately caused by a person acting under color of state or federal law.  *See Crumpton v. Gates*,

09    947 F.2d 1418, 1420 (9th Cir. 1991).  To satisfy the second prong, a plaintiff must allege facts

10    showing how individually named defendants caused or personally participated in causing the harm

11    alleged in the complaint.  *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

12          A careful review of plaintiff's amended complaint reveals that, with a single exception,

13    plaintiff has not alleged sufficient facts to demonstrate that any defendant personally participated

14    in causing the harm alleged in the complaint.  As noted by defendants in their summary judgment

15    motion "[m]ost of Mills' allegations contain a recitation of his grievances followed by a statement

16    that he submitted letters, service request kites, oral complaints, and/or administrative grievances

17    to specific defendants to no avail."  (Dkt. No. 61 at 6.)  Even those allegations which contain

18    slightly more specific facts regarding the personal involvement of certain defendants, such as those

19    regarding plaintiff's transfer to, retention in, and conditions of confinement in, the acute

20    psychiatric housing unit, are nonetheless conclusory and therefore insufficient to state a cause of

21    action under § 1983.  *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

22          The single defendant against whom plaintiff has presented his allegations with the requisite

ORDER DIRECTING SERVICE BY
FIRST-CLASS MAIL AND PROCEDURES
PAGE -5

01    specificity is defendant Barbara Massey.[4]  However, as will be explained below, while plaintiff has

02    arguably alleged sufficient facts to demonstrate defendant Massey's personal participation, he has

03    not alleged sufficient facts to demonstrate that defendant Massey's conduct violated any of his

04    federal constitutional rights.

05                       Inadequate Access to Legal Material

06         Plaintiff alleges in his amended complaint that he encountered a number of barriers to his

07    right of access to the court.  Among plaintiff's contentions are that defendants failed to respond

08    to his requests for legal materials, granted him only limited access to law books, denied him all

09    access to certain materials, and denied him any physical access to the law library.

10         It is well established that inmates have a constitutional right of meaningful access to the

11    courts premised on the due process clause.  *Bounds v. Smith*, 430 U.S. 817, 821 (1977).  In order

12    to adequately allege a cause of action for deprivation of the right of access to the courts, an inmate

13    must demonstrate that he suffered some actual injury to his right of access.  *Lewis v. Casey*, 518

14    U.S. 343 (1996).  While plaintiff identifies a number of deficiencies in the legal access scheme at

15    KCCF, he offers no evidence demonstrating that he suffered an actual injury to his right of access

16    as a result of these deficiencies.  Thus, plaintiff has not adequately alleged a cause of action for

17    deprivation of his right of access to the courts.

18                     Assignment to Psychiatric Housing Unit

19         Plaintiff alleges in his amended complaint that he was transferred from the general

20    population to psychiatric housing without his consent, without due process, and without any

21    justification.  The procedural guarantees of the Fourteenth Amendment's Due Process Clause

22

---

     [4] Plaintiff's claims against defendant Massey relate only to legal access.

01   apply only when a constitutionally protected liberty interest is at stake. *Ingraham v. Wright*, 430

02   U.S. 651, 672 (1977).  Liberty interests protected by the Fourteenth Amendment may arise from

03   either the Due Process Clause itself or from state law. *Meachum v. Fano*, 427 U.S. 215, 223-27

04   (1976).

05        It is well established that a prisoner does not have a constitutional right to a particular

06   classification status. *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987) (citing *Moody*

07   *v. Daggett*, 429 U.S. 78 (1976)).  Plaintiff appears to suggest in his amended complaint that he

08   has a state created liberty interest in freedom from placement in the psychiatric housing unit.

09   Plaintiff's specific assertion is that defendants are bound by the procedures set forth in RCW

10   71.05, and that they have violated those procedures.  (Dkt. No. 12 at 17.)  However, neither

11   plaintiff's pleading, nor this Court's review of RCW 71.05, *et seq.*, reveals how these statutory

12   provisions apply in the circumstances presented here.  As plaintiff has no constitutional right to

13   a particular classification status, and as plaintiff makes no showing that he has a state created

14   liberty interest in freedom from placement in the psychiatric housing unit, plaintiff's due process

15   claim fails.

16                               Conditions of Confinement

17        Plaintiff alleges in his amended complaint that he was subjected to unconstitutional

18   conditions during his confinement in the psychiatric housing unit.  In addition to his claims that

19   his placement inhibited his right of legal access, he also claims that his commissary privileges were

20   restricted, he was subjected to unsanitary and unsafe conditions, and he received inadequate

21   medical care.  He further contends that, while in the psychiatric housing unit, he was denied access

22   to outside recreation, television, and group worship.

ORDER DIRECTING SERVICE BY
FIRST-CLASS MAIL AND PROCEDURES
PAGE -7

01      The Eighth Amendment imposes a duty upon prison officials to provide humane conditions

02  of confinement.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  This duty includes ensuring that

03  inmates receive adequate food, clothing, shelter, and medical care.  In order to establish an Eighth

04  Amendment violation, a prisoner must show that prison officials knew of and disregarded a

05  substantial risk of serious harm to his health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 837

06  (1994). Because plaintiff asserts that he was a pretrial detainee at the time he was subject to the

07  alleged unconstitutional conduct of defendants, his claims arise under the Due Process Clause of

08  the Fourteenth Amendment.  *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996).  Eighth

09  Amendment standards are, however, still applicable to his claims.  *See Id.*

10      In order to establish an Eighth Amendment violation, a prisoner must satisfy a two-part

11  test containing both an objective and a subjective component.  The Eighth Amendment standard

12  requires proof that (1) the alleged wrongdoing was objectively "harmful enough" to establish a

13  constitutional violation; and (2) the prison official acted with a sufficiently culpable state of mind.

14  *Farmer v. Brennan*, 511 U.S. at 834.

15      The objective component of an Eighth Amendment claim is "contextual and responsive to

16  'contemporary standards of decency'" *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)(quoting *Estelle*

17  *v. Gamble*, 429 U.S. 97, 103 (1976)).  The state of mind requirement under the subjective

18  component of the Eighth Amendment standard has been defined as "deliberate indifference" to an

19  inmate's health or safety.  *Farmer v. Brennan*, 511 U.S. at 834.

20      Plaintiff makes clear in his amended complaint that he was dissatisfied with his housing

21  assignment, with the mental health treatment he received at KCCF, and with the conditions under

22  which he was confined in the psychiatric unit.  However, plaintiff makes no showing that

ORDER DIRECTING SERVICE BY
FIRST-CLASS MAIL AND PROCEDURES
PAGE -8

01    defendants were deliberately indifferent to his health or safety. Defendants have provided evidence

02    that plaintiff was assigned to the psychiatric housing unit in an effort to ensure his own safety, and

03    that defendants were responsive to plaintiff's mental health issues. Plaintiff has come forth with

04    no evidence to refute the evidence presented by defendants. Likewise, plaintiff has provided no

05    evidence that he suffered any serious harm as a result of the alleged unconstitutional conditions.

06    Thus, plaintiff has failed to adequately allege any due process violation related to his confinement

07    in the psychiatric housing unit.

08    CONCLUSION

09         Defendants have properly supported their summary judgment motion by pointing out

10    through argument, declarations, and exhibits that "that there [was] an absence of evidence to

11    support" plaintiff's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In light of

12    the evidence produced by defendant in support of her summary judgment motion, the burden was

13    on plaintiff to produce authenticated materials in opposition to the motion that "set forth specific

14    facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Celotex*, 477 U.S.

15    at 323. Plaintiff fails to satisfy that burden and, thus, defendants are entitled to summary

16    judgment. This Court therefore recommends that defendants' motion for summary judgment be

17    granted. A proposed order accompanies this Report and Recommendation.

18         DATED this <u>14th</u> day of June, 2006.

19

20    Mary Alice Theiler
       United States Magistrate Judge

21

22